# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CLAUDIA S.,

   **Plaintiff,**

**v.**

**ANDREW SAUL,** *Commissioner, Social Security Administration,*[1]

   **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:18-cv-01896-AJB**

## ORDER AND OPINION[2]

Plaintiff Claudia S. brought this action pursuant to §§ 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for social security

---

[1]    On June 17, 2019, Andrew Saul was sworn in as the Commissioner of the Social Security Administration. Under the Federal Rules of Civil Procedure, Saul "is automatically substituted as a party." Fed. R. Civ. P. 25(d). The Clerk is hereby **DIRECTED** to amend the case style to reflect the substitution.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entries dated May 16, 2018). Therefore, this Order is a final Order of the Court.

disability insurance benefits ("DIB") and supplemental security income benefits

("SSI") under the Social Security Act.[3]  For the reasons set forth below, the Court

**REVERSES** the final decision of the Commissioner **AND REMANDS** the case to

the Commissioner for further proceedings consistent with this opinion.

## I.     PROCEDURAL HISTORY

On June 4, 2015, Plaintiff filed an application for SSI in which she alleged

disability beginning on August 1, 2014, [Record (hereinafter "R") 170-75], and on

July 20, 2015, she filed an application for DIB in which she alleged disability

beginning on May 15, 2015, [R176-80].   Plaintiff's applications were denied

initially and on reconsideration.   [R77-128, 133-40].   Plaintiff then requested a

---

[3]      Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for SSI.   Title II of the Social Security Act provides for DIB. 42 U.S.C. § 401, *et seq.*   Unlike DIB claims, SSI claims are not tied to the attainment of a particular period of insurance eligibility.   *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).   Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   Thus, in general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.   *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).   Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.

hearing before an Administrative Law Judge ("ALJ"). [R141-42]. An evidentiary hearing was held on May 19, 2017. [R61-76]. The ALJ issued a decision on June 7, 2017, denying Plaintiff's application on the ground that she had not been under a "disability" within the meaning of the Social Security Act at any time from May 15, 2015, through the date of the decision. [R11, 20]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on April 19, 2018, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed action in this Court on May 1, 2018, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on August 14, 2018. [Docs. 10, 11]. On August 24, 2018, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 14]; on November 1, 2018, the Commissioner filed a response in support of the decision, [Doc. 17]; and on November 5, 2018, Plaintiff filed a reply brief in support of her petition for review, [Doc. 18]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs,[4] and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[4]      Neither party requested oral argument.  (*See* Dkt.).

## II.     STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228

(11th Cir. 1999), *superseded by* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000),[5] *on other grounds as stated in Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360-61 (11th Cir. 2018).  The claimant must prove at step one that he is not undertaking substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing

---

[5]     Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process.  *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001); *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations.  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983),

*superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in*

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11ᵗʰ Cir. 1991).

## III.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security

benefits by the Commissioner.   Judicial review of the administrative decision

addresses three questions: (1) whether the proper legal standards were applied;

(2) whether there was substantial evidence to support the findings of fact; and

(3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*,

558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478,

488 (N.D. Ga. 1980).   This Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*,

395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005).   If substantial evidence supports the

Commissioner's factual findings and the Commissioner applies the proper legal

standards, the Commissioner's findings are conclusive.   *Lewis v. Callahan*,

125 F.3d 1436, 1439-40 (11ᵗʰ Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11ᵗʰ Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11ᵗʰ Cir. 1990); *Walker*

*v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987) (per curiam); *Hillsman v. Bowen*,

804 F.2d 1179, 1180 (11ᵗʰ Cir. 1986) (per curiam); *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11ᵗʰ Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## IV.   ADMINISTRATIVE DECISION

In the administrative decision, the ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since May 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: mild degenerative changes of the lumbar spine, diabetes and diabetic neuropathy (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

. . .

6.  The claimant is capable of performing past relevant work as a Service Technician (D.O.T. # 201.367-014 Light Skilled SVP 6). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. . .

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[R13-20]. The ALJ noted, among other things, that on August 13, 2015, Plaintiff

had undergone a physical consultative evaluation with Charles F. Scott, M.D.; that

9

Dr. Scott found that Plaintiff was mildly obese, she displayed a mild-to-moderate limp, her heel-heel and toe-toe walking were remarkable, she had problems with squatting, her reaction to a pinprick was somewhat decreased, she displayed limitations in range of motion, her reflexes and strength were somewhat abnormal, incoordination was present in the left lower extremity, and radiological studies of the lumbar spine revealed mild changes; and that Dr. Scott opined that Plaintiff "would appear to have problems with prolonged standing, prolonged walking, bending and crouching, but not with lifting at this time." [R15-16]. The ALJ explained, however, that he assigned only "some weight" to Dr. Scott's opinion because Plaintiff had only mild findings on radiographs, Plaintiff's neuropathy was controlled with medication, Dr. Scott suggested nothing more than structured exercise as treatment, and Plaintiff had received no treatment for her degenerative condition since her alleged onset date. [R18]. The ALJ additionally explained that during the evaluation with Dr. Scott, Plaintiff reported and displayed several limitations that the ALJ found to be inconsistent with the longitudinal record: while she displayed difficulty with her hearing during the examination, she was noted elsewhere to have no issues with her hearing and Dr. Scott noted that she was able to hear a soft-spoken voice; while she displayed limitations in range of motion, mild decreased strength, and a limp, these things were not noted elsewhere in the

record since her alleged onset date; while she presented with a cane during her consultative evaluation and her administrative hearing, the cane was not prescribed by a physician, Dr. Scott noted that Plaintiff did not require use of it in the examination room, and Plaintiff was not noted to be using it during any health-care visit since her alleged onset date; although Plaintiff alleged 10/10 pain to Dr. Scott and testified to extreme back pain, she denied all pain during a hospital evaluation taking place after she was admitted for a suicide attempt; and although Plaintiff stated during treatment at Willing Helpers Medical that she was also receiving treatment through Resurgens, the record failed to support the statement. [R17]. The ALJ then explained that he based the adverse disability finding on vocational-expert testimony that a person of Plaintiff's age, education, and work history, with the above RFC, could work in Plaintiff's former position as a service technician as she described it and as the job is actually performed. [R19].

## V.    CLAIMS OF ERROR

Plaintiff argues that the ALJ's finding that she is capable of "light" work is not supported by substantial evidence; that she is in fact restricted to sedentary work; and that because she is more than fifty-five years old, she should have been

found "disabled" under the grids pursuant to Medical Vocational Rule 201.06.[6] [Doc. 14]. In support, Plaintiff points out that she is fifty-nine years old with a high-school education and work history at light or medium exertional levels, [R75]; that recent medical records indicate that her blood sugars fluctuate from the 150s to as high as 446,[7] [R436-37], that she has numbness in her hands and feet, [R437],

---

[6]     The grids are a series of matrices that correlate a set of variables: the claimant's residual functional capacity (i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered. *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985). Rule 201.06 of 20 C.F.R. Part 404, Subpart P, Appendix 2 provides that a person is "disabled" within the context of the Social Security Act when she is limited to sedentary work, she is "of advanced age" (fifty-five years old or older), her education does not provide for direct entry into skilled work, and her skills are not transferable. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.00, 201.06.

[7]     Normal fasting blood sugar is less than 100 mg/dL, and normal non-fasting blood sugar is below 125 mg/dL. MedlinePlus, Blood Sugar Test, https://medlineplus.gov/ency/article/003482.htm (last visited 7/12/19).

and that her medications include metformin, [8] glimepiride, [9] lisinopril, [10]

_____

[8] Metformin increases the body's response to insulin. Metformin is often used alone or with other medications, including insulin, to treat type II diabetes. MedlinePlus, Metformin, https://medlineplus.gov/druginfo/meds/a696005.html (last visited 7/12/19).

[9] Glimepiride is used, along with diet and exercise and sometimes other medications such as insulin, to treat type II diabetes. It lowers blood sugar by causing the pancreas to produce insulin and helping the body use insulin efficiently. MedlinePlus, Glimepiride, https://medlineplus.gov/druginfo/meds/a696016.html (last visited 7/12/19).

[10] Lisinopril is used to treat high blood pressure and is used in combination with other medications to treat heart failure and to improve survival after a heart attack. It works by decreasing certain chemicals that tighten the blood vessels, so blood flows more smoothly and the heart can pump blood more efficiently. MedlinePlus, Lisinopril, https://medlineplus.gov/druginfo/meds/a692051.html (last visited 7/12/2019).

lovastatin,[11] gabapentin,[12] Lantus,[13] Prilosec,[14] and aspirin,[15] [R431].   [Doc. 14

---

[11]     Lovastatin is used together with diet, weight loss, and exercise to reduce the risk of heart attack and stroke and to decrease the chance that heart surgery will be needed in people who have heart disease or who are at risk of developing heart disease.  It is also used to decrease the amount of cholesterol and other fatty substances in the blood.  MedlinePlus, Lovastatin, https://medlineplus.gov/druginfo/meds/a688006.html (last visited 7/12/19).

[12]     Gabapentin is often used to help control certain types of seizures in patients who have epilepsy.  It is also used to relieve nerve pain and restless-legs syndrome.  MedlinePlus, Gabapentin, https://medlineplus.gov/druginfo/meds/a694007.html (last visited 7/12/19).

[13]     Lantus (insulin glargine) is a long-acting, man-made version of human insulin.  It works by replacing the insulin that is normally produced by the body and by helping move sugar from the blood into other body tissues where it is used for energy.  It also stops the liver from producing more sugar.  MedlinePlus, Insulin Glargine (rDNA origin) Injection, https://medlineplus.gov/druginfo/meds/a600027.html (last visited 7/12/19).

[14]     Prilosec (omeprazole) is used to treat gastroesophageal reflux disease ("GERD"), a condition in which backward flow of acid from the stomach causes heartburn and possible injury to the esophagus (the tube between the throat and stomach).  MedlinePlus, Omeprazole, https://medlineplus.gov/druginfo/meds/a693050.html (last visited 7/12/19).

[15]     Prescription aspirin is used to relieve the symptoms of rheumatoid arthritis, osteoarthritis, systemic lupus erythematosus, and certain other rheumatologic conditions.  Nonprescription aspirin is used to reduce fever; to relieve mild to moderate pain from headaches, menstrual periods, arthritis, colds, toothaches, and muscle aches; to prevent heart attacks in people who have had a heart attack in the past or who have angina (chest pain that occurs when the heart does not get enough oxygen); and to prevent ischemic strokes (strokes that occur when a blood clot blocks the flow of blood to the brain) or mini-strokes (strokes that occur when the flow of blood to the brain is blocked for a short time).  MedlinePlus, Aspirin, https://medlineplus.gov/druginfo/meds/a682878.html (last visited 7/12/19).

at 2]. She additionally argues that the ALJ overlooked evidence that during an office visit taking place on December 21, 2015, orthopedic surgeon Howard McMahan of Resurgens Orthopaedics found that Plaintiff had "moderate to severe foraminal narrowing" in the cervical area,[16] an antalgic gait,[17] a mildly positive Romberg,[18] difficulty with heel-to-toe walking, a very limited lumbar range of motion with severe pain, hypoactive reflexes in the knees and ankles, generalized weakness throughout the lower extremities, and decreased sensation from the knees down bilaterally, [R320-22]; assessed Plaintiff with severe back pain with numbness, weakness, and loss of balance, peripheral neuropathy secondary to

_____

[16] "Foraminal narrowing" refers to a narrowing of a nerve opening where a nerve root leaves the spinal canal. MedlinePlus, Foraminotomy, https://medlineplus.gov/ency/article/007390.htm (last visited 7/12/19).

[17] An antalgic gait is a limp adopted so as to avoid bearing weight on the injured side of the body, thereby reducing pain. The Free Online Medical Dictionary, Antalgic Gait, http://medical-dictionary.thefreedictionary.com/ antalgic+gait (last visited 7/12/19).

[18] A health-care provider performs a Romberg test by asking the patient to stand up with her feet together and her eyes closed. If the patient loses balance, it is a sign that the sense of position has been lost, and the test is considered positive. MedlinePlus, Movement - Uncoordinated, https://medlineplus.gov/ency/article/ 003198.htm (last visited 7/12/19).

diabetes,[19] and previous stenosis, facet arthropathy,[20] and bulging disc at L3-4, L4-5, and C5-6; and opined, "I do not think she could return to her regular job at this time and I do not anticipate that in the future," [R322], all of which she contends bolsters Dr. Scott's findings and opinions. [Doc. 14 at 3, 6-7]. Plaintiff also points out that Dr. Scott found Plaintiff's weight to be 150 pounds, when she is in the range of 225 to 250 pounds; that Dr. Scott did not mention Plaintiff's neck in his clinical summary, [*compare* R291-95 (Dr. Scott examination summary dated August 13, 2015) *with* R320-22 (Dr. McMahan's notes dated December 21, 2015, indicating that Plaintiff weighed 220 pounds) and R431-40 (Willing Helpers medical notes dated February 11, 2016, through March 15, 2017, showing weight readings from 228 pounds to 252.5 pounds)]; and that even Dr. Scott acknowledged

---

[19]     "Peripheral neuropathy" occurs when nerves that carry signals to and from the spinal cord or the brain and the rest of the body become damaged and no longer work properly. MedlinePlus, Peripheral Neuropathy, https://medlineplus.gov/ency/article/000593.htm (last visited 7/12/19).

[20]     "Arthropathy" is a disease of the joints. J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine, Illustrated* A-542 (46th ed. 2012). Facet joints are situated between the stacked vertebrae and typically lie behind the spinal nerves as they emerge from the central spinal canal. The two facet joints and intervertebral disc at each level of the spine allow for motion between the vertebral bodies. KnowYourBack.org., Anatomy of the Spine (Bones, Vertebrae), https://www.spine.org/KnowYourBack/Resources/AnatomySpine (last visited 7/12/19).

that Plaintiff appeared to have problems with bending, crouching, prolonged standing, and prolonged walking. [Doc. 14 at 3, 6].

In response, the Commissioner argues that substantial evidence supports the ALJ's findings and his assessment of Plaintiff's RFC. [Doc. 17 at 5-8]. The Commissioner contends that although Plaintiff alleged that she was disabled primarily due to back pain, [R305, 319-20], x-rays of her lumbar spine taken in August 2015 showed no acute change when compared to a radiograph from May 2015, prior to her alleged disability onset date, [R305], and a January 2016 MRI of Plaintiff's lumbar spine showed mostly minor spondylotic changes of the lumbar spine, no focal disc herniation, and moderate central canal stenosis at L4-5, but no foraminal stenosis, [R319-20]. [Doc. 17 at 5-6]. The Commissioner also argues that when Dr. Scott examined Plaintiff in August 2015, his findings were mild, [R291-95], and the evaluation therefore provides substantial evidence to support the ALJ's RFC determination. [Doc. 17 at 6-7]. The Commissioner also points out that the ALJ noted that other evidence of record supported a light RFC, such as hospital records from October 2015 indicating that Plaintiff did not complain of, nor was she diagnosed with, back pain, [R426-27], and that progress notes from Willing Helpers showed little to no treatment and no referrals to specialists for back pain and indicated that Plaintiff's neuropathy was treated with

medication, [R432-40]. [Doc. 17 at 8].

Notably, however, the Commissioner does not address Plaintiff's arguments that the ALJ overlooked the 2015 medical notes and opinion of Dr. McMahan. [*See generally* Doc. 17]. The record shows that Dr. McMahan saw Plaintiff multiple times over a period of years, [R277-82, 319-22], which indicates that he was a treating physician. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or who has had, an ongoing treatment relationship with you."). Absent a showing of good cause, and ALJ must give "substantial or considerable weight" to the medical opinion of a treating physician. *Winschel v. Comm'r of Soc. Sec.*, 631 d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p, 1996 WL 374188.[21] Even if Dr. McMahan were not a treating physician, it would have been necessary for the ALJ to evaluate his opinion: the Commissioner must evaluate every medical opinion the agency receives, 20 C.F.R. §§ 404.1527(c),

_____

[21] This standard applies to claims filed, as Plaintiff's was, on or before March 26, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927 (2017); *Corr. Not. of Rescission of Soc. Sec. Rulings*, 96-2p, 96-5p, & 06-3p, 2017 WL 3928297 (Apr. 6, 2017); *Not. of Rescission of Soc. Sec. Rulings*, 96-2p, 96-5p, & 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

416.927(c); SSR 06-03p, 2006 WL 2329939 at *4, and "must state with particularity the weight given to different medical opinions and the reasons therefor," such that the reviewing court may determine "whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (punctuation omitted) (reversing the administrative decision where "the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered").

Here, the Court finds no indication in the ALJ's decision that he considered Dr. McMahan's December 2015 opinion, much less that he stated good cause for discounting the opinion. [*See generally* R10-20]. Indeed, the ALJ appears to have discounted Plaintiff's credibility, in part, based on the absence of post-onset treatment at Resurgens. [*Compare* R17 (ALJ's finding that the record did not support Plaintiff's statement that she was being treated at Resurgens) *with* R440 (February 2016 Willing Helpers note that Plaintiff reported being treated at Resurgens); R321-22 (Dr. McMahan's notes from Plaintiff's December 2015 visit to Resurgens)]. Additionally, the ALJ discounted Dr. Scott's opinion that Plaintiff would have problems with prolonged standing, prolonged walking, bending, and crouching based on the ALJ's determination that Dr. Scott's findings as to

Plaintiff's limp, limited range of motion, and decreased strength were not found during other examinations, and imaging showed no more than mild degenerative changes, [R17], yet Dr. McMahan found that Plaintiff had an antalgic gait and mildly positive Romberg; she had difficulty with heel-to-toe walk; she had limited range of motion with severe pain; her knee and ankle reflexes were hypoactive; she had generalized weakness through the lower extremities; she had decreased sensation from the knees down in both legs; she had moderate-to-severe bilateral neural foraminal narrowing and moderate central canal stenosis in the lumbar spine; and she was unlikely to be able to return to her regular job, [R321-22]. Thus, it appears that the ALJ missed Dr. McMahan's December 2015 notes and opinion.

In order to determine that the ALJ's decision was supported by substantial evidence, it must be clear the that ALJ took into account evidence both favorable and unfavorable to his opinion. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (holding that an administrative decision is not supported by "substantial evidence" where the ALJ acknowledges only the evidence favorable to the decision and disregards contrary evidence). Here, reference to the above-cited evidence shows that it is simply not true that Plaintiff falsely stated that she was being treated Resurgens, that imaging showed only mild degenerative changes, or that there is no medical evidence corroborating Dr. Scott's findings that

20

Plaintiff would be limited in the areas of prolonged standing, prolonged walking, bending, and crouching.[22] [R319-22]. Thus, it is clear that the ALJ failed to consider evidence unfavorable to his opinion. Moreover, as Plaintiff points out, a light RFC requires a person to be standing or walking most of the workday, and thus, if Dr. Scott's and Dr. McMahan's opinions were to be fully credited, she would likely be limited to sedentary work, [Doc. 14 at 6 (citing SSR 83-10, at *5 (noting that the primary difference between sedentary work and most light jobs is that a job at the "light" exertional level "requires a good deal of walking or standing"))], and she therefore would "grid out" under Medical-Vocational Rule 201.06, [Doc. 14 at 1]. Consequently, the undersigned concludes that the ALJ's decision is not supported by substantial evidence, nor are the ALJ's errors harmless.

_____

[22]    Even though Dr. McMahan's opinion included an ultimate opinion of disability reserved to the Commissioner—that Dr. McMahan did not think that plaintiff could return to her regular job—it was still necessary for the ALJ to take the opinion into consideration. *See Kelly v. Comm'r of Soc. Sec.*, 401 Fed. Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration.") (citations omitted).

## VI.   <u>CONCLUSION</u>

In conclusion, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.

The Clerk is **DIRECTED** to enter final judgment in favor of Plaintiff.

**IT IS SO ORDERED and DIRECTED**, this 12th day of July, 2019.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE